**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| NEFT, LLC, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:04-CV-536 |
| | ) | (Phillips) |
| BORDER STATES ENERGY, LLC, | ) | |
| WILLIAM STAPES (an individual), | ) | |
| JAMES T. STAPLES (an individual), | ) | |
| ANNETTE B. STAPLES (an individual), | ) | |
| LYLE H. COOPER (an individual), | ) | |
| PATRICK L. MARTIN (an individual), and | ) | |
| STEVEN A. WALLACE, (an individual), | ) | |
|     Defendants. | ) | |
| And | | |
| BORDER STATES ENERGY, LLC, | ) | |
| WILLIAM STAPLES, JAMES T. STAPLES, | ) | |
| ANNETTE STAPLES, LYLE H. COOPER, | ) | |
| PATRICK L. MARTIN AND STEVEN A. WALLACE, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:04-CV-570 |
| | ) | Consolidated with |
| NEFT, LLC, | ) | No. 3:04-CV-536 |
|     Defendant. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A hearing was held on NEFT's motion for civil contempt on April 27, 2006. Following the hearing, the parties filed proposed findings of fact and conclusions of law. Having heard the testimony of the parties, having reviewed the exhibits introduced into evidence, and having considered the parties' proposed findings and conclusions, the following are the court's findings of fact and conclusions of law:

Findings of Fact

In November 2004, NEFT brought this nine-count action against the defendants in order to recover $484,000 that it had given to defendants as part of an oil well investment contract. NEFT alleged various securities and fraud-related actions.

Defendant Border States Energy, LLC (BSE) is a limited liability company duly organized and existing under the laws of the State of Kentucky, with its principal place of business at 10267 Kingston Pike, Knoxville, Tennessee. The only members of BSE include the individual defendants in this case, William Staples, James Staples, Lyle Cooper, Steven Wallace, and BFM Partnership. Patrick Martin's interest in BSE is held through BFM Partnership. Patrick Martin is a general partner of BFM Partnership.

The Well Development Contract and Operating Agreement entered into between NEFT and BSE states:

> The second party [NEFT] hereto agrees and accepts the conditions of the well development and operating agreement and further acknowledges the numerous risks involved in an investment in this project. The second party further acknowledges that it can withstand the total loss of an investment in this project without causing a change in lifestyle.

NEFT understood the risks of entering into an oil well development project and the speculative nature of an investment in oil wells. NEFT engaged Ensafe to produce geological reports for oil and gas prospect evaluation. The geological report was prepared

before NEFT entered into the agreement and was required by NEFT before it would enter into the agreement.

At commencement of this action, NEFT moved for a temporary restraining order, preliminary injunction and asset freeze to protect the status quo of existing evidence and the availability of monetary and equitable relief. The parties appeared before the court on March 18, 2005 regarding the outstanding motions. Prior to the hearing, the parties participated in a settlement conference. The parties announced an agreement to settle all issues, the terms of which were read into the court record.

The parties agreed that Border States Energy, Inc., (BSE) would provide a promissory note to NEFT in the amount of $450,000. According to the terms of the agreement, BSE was to pay the $450,000 in quarterly payments over 36 months. Each installment amounted to $40,616.24. This debt was to be secured by collateral acceptable to NEFT. In return for the Note, NEFT agreed to assign all of its interests in the Kentucky oil wells back to BSE. The parties' settlement agreement does not specify the assets to be pledged as security for the settlement. The parties agreed to close the transaction 60 days from the date of the hearing, or May 17, 2005. BSE's first payment was due 90 days subsequent to the closing date, or on August 16, 2005. Each party individually communicated assent to the settlement agreement. It was understood by all parties that the settlement agreement carried the full force of a court order.

The Note provided that in the event of any default, NEFT would give BSE ten days notice to cure the default. In the event of any uncured default, all future payments, and other amounts owing, would be accelerated and become due and payable to NEFT regardless of the stipulated date of maturity. The Note also provided that BSE would pay reasonable attorneys' fees, litigation expenses, courts costs, and all other collection costs.

On May 13, 2005, BSE sent NEFT a proposed list of collateral and accompanying documents. The proposed collateral consisted of five liens on (1) BSE's field drilling equipment, (2) BSE's drill site leases, (3) an option contract on a lease of a building, (4) BSE's shop equipment, and (5) BSE's leasehold interest in a large tract of land. Upon review of the documents, NEFT rejected the collateral.

On May 18, 2005, BSE delivered to NEFT a promissory note in the amount of $450,000 in compliance with the terms of the settlement agreement. Because the parties disagreed as to the collateral offered by BSE, the parties did not close the transaction on May 17, 2005. Notwithstanding, BSE represented to NEFT and the court that it would make the first settlement payment pursuant to the settlement agreement, which was due on or about August 15, 2005.

On or about August 19, 2005, BSE tendered an installment of the first payment in the amount of $30,658.32. Defendant Patrick Martin personally loaned BSE $29,000.00 which was used by BSE to make the majority of its initial payment to NEFT.

The parties negotiated payment of the remaining $9,957.92, at least part of which would be derived from a credit of funds available at Barrett Oil. A subsequent payment was made to NEFT in the amount of $3,000, however, almost $6,000 remained outstanding.

On or about September 19, 2005, the parties filed a joint report regarding the status of the settlement agreement, in which they stated that BSE had made its first payment under the settlement agreement and delivered a Note to NEFT for the full amount of the settlement. BSE also offered to NEFT a lien on all of its assets, including, without limitation, all of its leasehold interests in certain real property and all of its personal property and equipment.

The parties appeared before the court on October 4, 2005, to address the dispute regarding the adequacy of security and the balance outstanding on the first installment. The parties agreed that the individual defendants would tender written personal guaranties for the Note for $20,000 each.

Thereafter, the record shows that Defendant Martin raised an additional $75,000,00 from investors to provide working capital to BSE so that it could produce oil from the oil wells on which BSE had leasehold interests. The funds were used by BSE to make payments to NEFT and to attempt to produce oil on the leasehold property during the period from January 1, 2005 through December 31, 2005.

BSE then missed its second payment due under the note on November 16, 2005, which date was extended by agreement to December 16, 2005. When BSE needed more time, the parties negotiated an amendment to BSE's promissory note, which provided that the second payment would be due January 16, 2006, and set forth a penalty structure for future missed payments, beginning with the third payment, which would be due on February 16, 2006. The relevant penalty provision stated as follows:

> Commencing with the third payment due February 16, 2006, and for each payment thereafter, to the extent a payment is not made timely, a penalty of $1,000 for each ten (10) day period shall accrue until paid. However, Maker [BSE] shall have the right to declare its own default after which time no further penalties shall accrue. NEFT retains all rights to take any legal action.

BSE failed to tender the second and third installments, which were due on or about January 16, 2006 and February 16, 2006, respectively. BSE has not made any further payments under the settlement agreement.

On February 17, 2006, NEFT filed a motion for civil contempt and renewed request for preliminary relief. The parties appeared for a status conference on February 21, 2006. During the hearing, BSE represented that it was in the midst of negotiations with Miller Petroleum for a deal which could potentially finance exploitation of the oil wells which would allow BSE to become current with the payments owed to NEFT. BSE's sole source of revenue to pay the Note was from oil production.

In light of this announcement, the court ordered a hearing to take place on April 27, 2006, on NEFT's motion for contempt. Defendants filed responses to NEFT's motion for contempt in which they disclosed that Miller Petroleum investigated the oil well leases at issue and determined there was no commercial value in the wells. Therefore, the proposed transaction with Miller Petroleum did not materialize.

The parties appeared before the court on April 27, 2006 for an evidentiary hearing. Defendants Steven Wallace and Lyle Cooper testified on their behalf. The other defendants chose not to testify. Both Wallace and Cooper testified that during the settlement negotiations there was no agreement that the individual defendants would grant security interests in their own personal property to secure BSE's Note to NEFT.

An essential condition of the Note is the delivery of appropriate collateral acceptable to NEFT. It is undisputed that the Note has not been secured by such collateral. BSE has not performed its duty of delivery. Failure to propose adequate security constitutes a failure to perform the first term of the agreement – delivery of a Note secured by collateral acceptable to NEFT. Nor has BSE made the payments as set out in the Note.

NEFT has not shown that it is entitled to an asset freeze on the individual defendants' personal assets, as the evidence presented establishes that the individual defendants' personal liability for the settlement agreement is limited to $20,000 each.

NEFT accepted the personal guaranties in full satisfaction of any personal liability of the individual defendants. The $20,000 personal guaranties were offered and accepted as a partial cure for BSE's failure to offer complete and satisfactory security for the Note that was acceptable to NEFT. The guaranties state that they serve as an inducement to NEFT to accept the promissory note of BSE in the amount of $450,000 as partial performance of the settlement agreement entered into between NEFT, BSE, William Staples, Annette Staples, James Staples, Lyle Cooper, Steven Wallace, and Patrick Martin.

BSE has not made a single timely payment under the settlement, or offered alternative collateral. Accordingly, the court finds that BSE has breached the settlement agreement by failing to make payments in a timely fashion, and by failing to tender commercially reasonable security.

## Conclusions of Law

Civil contempt is established by a presentation, by clear and convincing evidence of (1) the existence of a valid order of the court, (2) that defendant had knowledge of the existence of that order, and (3) a violation of that order by defendant. *Elec. Workers Pension Trust Fund of Local Union #58 v. Gary's Elec. Serv. Co.,* 340 F.3d 373, 379 (6th Cir. 2003). The initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order is bourne by the party seeking civil contempt. *Id.* A *prima facie* showing of a violation shifts the burden to the alleged contemnor to defend his actions. *U.S. v. Rylander,* 460 U.S. 752, 757 (1983). In the Sixth

Circuit, the alleged contemnor "must show categorically and in detail why he is unable to comply with the court's order," to meet this burden. *Rolex Watch U.S.A., Inc., v. Crowley,* 74 F.3d 716, 720 (6th Cir. 1996). In evaluating an alleged contemnor's failure to comply with a court order, the court may inquire whether all reasonable steps in his power were taken to comply with the court's order. *Elec. Workers,* 340 F.3d at 379.

The parties' settlement agreement, announced in court on March 18, 2005, was adopted by the court and carried the full force of a court order. It is undisputed that each defendant had knowledge of the settlement agreement, as each stated his/her assent to the agreement in open court. As to the third element, the evidence demonstrates that BSE is in default under the Note. Timely payments have not been made and BSE has failed to provide adequate security for the note. The following payments are due and owing to NEFT:

| | |
|---|---|
| Second payment (past due from January 16, 2006) | $40,616.24 |
| Third payment (past due from February 16, 2006) | $40,616.24 |
| Fourth payment (past due May 14, 2006) | <u>$40,616.24</u> |
| | $121,848.72 |

The following penalties are owed to NEFT in accordance with the amendment to the promissory note:

| | |
|---|---|
| Penalty 1 for missed third payment 2/17/06 | $1,000.00 |
| Penalty 2 for missed third payment 2/27/06 | $1,000.00 |
| Penalty 3 for missed third payment 3/9/06 | $1,000.00 |
| Penalty 4 for missed third payment 3/19/06 | $1,000.00 |
| Penalty 5 for missed third payment 3/29/06 | $1,000.00 |
| Penalty 6 for missed third payment 4/8/06 | $1,000.00 |
| Penalty 7 for missed third payment 4/18/06 | $1,000.00 |
| Penalty 8 for missed third payment 4/28/06 | $1,000.00 |

| | |
|---|---|
| Penalty 9 for missed third payment 5/6/06 | $1,000.00 |
| Penalty 10 for missed third payment 5/16/06 | $1,000.00 |
| Penalty 11 for missed third payment 5/26/06 | $1,000.00 |
| Penalty 1 for missed fourth payment 5/15/06 | $1,000.00 |
| Penalty 2 for missed fourth payment 5/25/06 | <u>$1,000.00</u> |
| | $13,000.00 |

In light of the various breaches by BSE, the burden shifts to BSE to prove "categorically and in detail" that it was unable to comply with the court's order. In good faith, BSE offered all the assets that it had as collateral. BSE, in using its resources, as well as additional resources that Defendant Martin obtained, attempted to make the quarterly payments. This attempt was made by utilizing the only resource that BSE had, the development of the Kentucky oil wells. BSE, through Defendant Martin and Defendant Cooper engaged Miller Petroleum to help develop the oil wells, which evidences their good faith attempts to comply with the settlement agreement.

Impossibility of performance is a defense to civil contempt. *Glover v. Johnson,* 934 F.2d 703 (6th Cir. 1991); *Electrical Workers Pension v. Gary's Electric,* 340 F.3d 373 (6th Cir. 2003). The standard is whether the defendants took all reasonable steps within their power to comply with the court's order. *Peppers v. Barry*, 873 G.2d 967 (6th Cir. 1989). The testimony of Defendants Martin and Cooper was that they used every effort possible to "try to make this thing work." There was additional testimony that the defendants consulted with Miller Petroleum to get the wells operational; that the defendants expended their personal funds, bartered services, and spent time to meet the terms of the

-10-

settlement agreement. BSE's sole source of revenue to pay the Note was from oil production. It appears to the court that BSE utilized all good faith efforts at its disposal to make the scheduled payments to BSE. Moreover, BSE offered as collateral to secure the Note, all of it assets, which NEFT rejected. NEFT has pointed to no alternative assets, other than the individual defendants' personal assets, that it would accept as collateral. Accordingly, the court finds that NEFT has failed to establish that defendants are in civil contempt of the court's order.

NEFT moved to freeze the personal assets of the individual defendants, asserting that BSE was operated as a partnership, and not a LLC. The court disagrees. The Kentucky Limited Liability Act, KRS § 275.0001, *et seq.,* permits the establishment of a member managed limited liability company. It does not require officers. KRS § 275.165(1). The operating agreement may be written or oral. KRS § 275.015(14). Although Lyle Cooper testified that he keeps records of the business transactions and meetings of BSE, no formal minutes are required. KRS § 275.185.

Members, managers, employees and agents of a Kentucky limited liability company are immune from personal liability by reason of being a member, manager, employee or agent, for any debt, obligation or other liability of the LLC arising in contract, tort or otherwise. KRS § 275.150. Thus, the individual defendants are immune from personal liability for BSE's debt to NEFT.

The settlement announced to the court on March 18, 2005, obligated only BSE to execute a $450,000.00 promissory note and provide collateral. The settlement agreement did not obligate the individual defendants to execute the Note, to make payments under the Note, or to guarantee payments and performance by BSE. If the plaintiff was under the impression that individual collateral was to be pledged, then it would seem logical that the Note would be executed by the individual defendants.

By accepting the guaranties of the individual defendants, NEFT accepted an accord and satisfaction of the obligations which the individual defendants had to NEFT. Any other claim by NEFT against the individual defendants which requires the promise of any person to answer for the debt of Border States, must be in writing to be enforceable. *See* Tenn. Code Ann. § 29-2-101(2). The settlement agreement announced to the court on March 18, 2005, did not personally obligate the individual defendants to pay BSE's debt or personally provide collateral to secure BSE's debt. It is clear from the record that the Note was from BSE to NEFT and not from the individual defendants.

The acceptance by NEFT of the promissory note from BSE, of a payment, and the tender of all BSE's property as collateral, constitutes a compromise and settlement of NEFT's claims against BSE. It was an agreement to accept, in settlement of NEFT's claims, an obligation, something different from or less than that to which NEFT claims it was entitled. NEFT therefore has a cause of action against BSE on the Note and in addition, make demand against each of the individual defendants that signed guaranties

for payment of the note, the amount of the guaranties. *See Rosenthal v. Hantscho,* 1992 WL 102501 (6th Cir. Apr. 29, 1992).

Turning now to NEFT's remedies under the Note, the court notes that public policy favors settling cases without litigation and settlement agreements should be upheld whenever it is equitable to do so. *Aro Corp. V. Allied Witan Co.,* 531 F.2d 1368, 1372 (6th Cir. 1976). District courts have the inherent power to enforce settlement agreements entered into by parties litigating in a pending case. *Bamerilease Capital Corp. V. Nearburg,* 958 F.2d 150, 152 (6th Cir. 1992); *Aro Corp.,* 531 F.2d at 1370.

There is no question that NEFT, BSE and the individual defendants negotiated a settlement in this case. The promissory note from BSE to NEFT was to be full and final settlement of NEFT's claims. The parties' settlement, announced in court, was clear and unambiguous. I conclude that the parties made a binding oral agreement to settle this case. Moreover, the agreement is sufficiently definite to be enforced by this court. The court believes it is appropriate to enter a judgment reflecting the terms of the settlement as agreed upon by the parties.

The court finds that BSE is in default under the promissory note and that pursuant to the terms of the note, all future payments are accelerated. The amount owing for future payments is calculated as follows:

| | |
|---|---:|
| Amount to be secured under the promissory note | $450,000.00 |
| First installment under the note | 43,616.24 |
| Past due installments | <u>121,848.72</u> |
| Balance owing under the promissory note | $284,535.04 |

The court finds that all matters in controversy between the plaintiff, NEFT, and the defendants, BSE, William Staples, James Staples, Annette Staples, Lyle Cooper, Patrick Martin and Steven Wallace became settled on March 18, 2005. It is hereby ordered that the action of plaintiff against defendants is dismissed with full prejudice.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff NEFT's motion to hold BSE and the individual defendants in contempt [Doc. 52] is **DENIED**; NEFT's motion for preliminary relief is also **DENIED.**

2. Defendant BSE is in default under the promissory note and is **ORDERED** to immediately pay NEFT $419,383.76 (past due installments -$121,848.72, plus penalties - $13,000.00, plus balance remaining on Note - $284,535.04).

3. The individual defendants, Jim and Annette Staples, William Staples, Lyle Cooper, Steven Wallace and Patrick Martin are **ORDERED** to immediately pay NEFT their $20,000.00 personal guaranties, for a total of $100,000.00 to NEFT to be applied to the balance owing under the promissory note.

4. BSE is **ORDERED** to reimburse NEFT for its reasonable attorney fees and costs incurred in enforcing the Note. NEFT shall file an application for such costs and

fees within ten (10) days of this order. BSE shall have five (5) days from service of NEFT's application in which to file a response. Any reply by NEFT shall be filed within three (3) days of service of BSE's response.

5. The case having been settled as per the announcement of counsel in open court on March 18, 2005, it is **ORDERED** that plaintiff's complaint be and it hereby is **DISMISSED WITH FULL PREJUDICE.**

An order consistent with these findings of fact and conclusions of law will be entered.

**ENTER:**

     s/ Thomas W. Phillips     
United States District Judge