UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| NEFT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:04-cv-536 |
| | ) | (Phillips/Shirley) |
| BORDER STATES ENERGY, LLC; | ) | |
| WILLIAM STAPLES; JAMES T. | ) | |
| STAPLES; ANNETTE B. STAPLES; | ) | |
| LYLE H. COOPER; PATRICK L. | ) | |
| MARTIN; and STEVEN A. WALLACE, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by Order [Doc. 82] of the Honorable Thomas W. Phillips, United States District Judge, for a report and recommendation on the Plaintiff's Application for Attorneys Fees Pursuant to the Court's Order Dated September 22, 2006 [Doc. 79].[1] The undersigned held a hearing on this application on November 15, 2006. For the reasons set forth below, the undersigned **RECOMMENDS** that the Plaintiff NEFT, LLC be awarded **$24,059.50** in attorneys' fees.

---

[1] In this application [Doc. 79], the plaintiff also moves to amend the judgment previously entered in this case. However, that portion of the plaintiff's pleading has not been referred to the undersigned and instead will be considered by the District Court following the undersigned's report and recommendation on the application for attorneys' fees. [Doc. 82].

## I. BACKGROUND

The plaintiff NEFT, LLC ("NEFT") brought this action in November, 2004, seeking to recover $484,000 that it had given to the defendants as part of an oil well investment contract. In its complaint, NEFT alleged various securities and fraud-related actions.

At the outset of this litigation, NEFT moved for a temporary restraining order, preliminary injunction, and asset freeze in order to protect the existing evidence and the availability of monetary and equitable relief. The District Court held a hearing on these motions on March 18, 2005. At that hearing, the parties announced that they had reached a settlement agreement with respect to all issues. The terms of the settlement agreement were read into the court record and were summarized in the District Court's Findings of Fact and Conclusions of Law as follows:

> The parties agreed that Border States Energy, Inc., (BSE) would provide a promissory note to NEFT in the amount of $450,000. According to the terms of the agreement, BSE was to pay the $450,000 in quarterly payments over 36 months. Each installment amounted to $40,616.24. This debt was to be secured by collateral acceptable to NEFT. In return for the Note, NEFT agreed to assign all of its interests in the Kentucky oil wells back to BSE. The parties' settlement agreement does not specify the assets to be pledged as security for the settlement. The parties agreed to close the transaction 60 days from the date of the hearing, or May 17, 2005. BSE's first payment was due 90 days subsequent to the closing date, or on August 16, 2005. Each party individually communicated assent to the settlement agreement. It was understood by all parties that the settlement agreement carried the full force of a court order.
>
> The Note provided that in the event of any default, NEFT would give BSE ten days notice to cure the default. In the event of any uncured default, all future payments, and other amounts owing, would be accelerated and become due and payable to NEFT regardless of the stipulated date of maturity. The Note also provided that BSE would pay reasonable attorneys' fees, litigation expenses, courts costs, and all other collection costs.

[Doc. 77 at 3-4].

On May 13, 2005, BSE sent NEFT a proposed list of collateral and accompanying documents. Upon review of the documents, NEFT rejected the collateral. On May 18, 2005, BSE delivered to NEFT a promissory note in the amount of $450,000 in compliance with the terms of the settlement agreement. However, the transaction did not close due to the parties' disagreement regarding the collateral offered by BSE. Nevertheless, BSE represented to NEFT and the Court that it would make its first settlement payment by August 15, 2005 in compliance with the terms of the settlement agreement.

On August 19, 2005, BSE tendered a payment of $30,658.32 to NEFT. The parties negotiated payment of the remaining $9,957.92. A subsequent payment of $3,000 was made; however, over $6,000 remained outstanding.

On October 4, 2005, the parties appeared before the District Court to address the dispute regarding the adequacy of security and the balancing outstanding on the first installment payment. The parties agreed that the individual defendants would tender written personal guaranties for the Note for $20,000 each.

BSE missed its second payment due under the note on November 16, 2005, which was extended by agreement to December 16, 2005. The parties then negotiated an amendment to the Note, providing that the second payment would be due January 16, 2006 and setting forth a penalty structure for future missed payments, beginning with the third payment due on February 16, 2006. BSE failed to tender the second and third installments as required.

On February 17, 2006, NEFT filed a motion for civil contempt and renewed request for preliminary relief. The parties appeared for a status conference before the District Court on February 21, 2006. The Court set an evidentiary hearing on NEFT's motion for contempt on April

3

27, 2006. Following the hearing, which included oral argument, the examination of two witnesses, and the introduction of several exhibits, the parties submitted proposed findings of fact and conclusions of law.

In its Findings of Fact and Conclusions of Law, the District Court found that BSE had "breached the settlement agreement by failing to make payments in a timely fashion, and by failing to tender commercially reasonable security." [Doc. 77 at 8]. Accordingly, the Court ordered BSE to immediately pay NEFT a total of $419,383.76, representing the amount of past due installments, plus penalties, and the remaining balance. The Court further ordered the individual defendants to immediately pay NEFT their $20,000 personal guaranties "to be applied to the balance owing under the promissory note." Finally, the Court ordered BSE to reimburse NEFT "for its reasonable attorney fees and costs incurred in enforcing the Note." [Doc. 77 at 14]. A Judgment Order [Doc. 78] was entered, and this case was dismissed. This application for attorneys' fees followed.

## II.  ANALYSIS

In its application, the plaintiff argues that the motion for civil contempt and the related proceedings were clearly completed in an effort to enforce the terms of the settlement. Accordingly, the plaintiff seeks to recover a total amount of $36,355.50 for the attorneys' fees and costs incurred from the defendants' failure to deliver adequate security on May 13, 2005, until the final reply brief regarding the proposed findings of fact and conclusions of law was filed on June 23, 2006. [Doc. 79].

In support of its application, the plaintiff submits the Declaration of attorney Matthew C. Wagner, a partner at the law firm Collen IP, in Ossining, New York, which firm was the counsel of record for NEFT in this matter. Wagner states in his declaration that he performed professional services relating to the enforcement of the settlement agreement of 50.85 hours at an hourly rate of $355 per hour for a total lodestar of $18,051.75; that attorney Brendan J. Reilly, an associate with Collen IP, performed professional services relating to the enforcement of the settlement agreement of 72.2 hours at a rate of $195 per hour for a lodestar of $14,079.00; and that Oren Gelber, a third-year law student employed as a law clerk at Collen IP, performed professional services relating to the enforcement of the settlement agreement of 8.42 hours at a rate of $125 per hour for a total of $1,052.50. Wagner states that the total amount of attorneys' fees incurred in this matter relating to the enforcement of the settlement agreement is $33,183.25. In addition to attorneys' fees, Wagner states that the plaintiff incurred significant costs for shipping, legal research, transcription costs, and airfare, in the total amount of $3,172.25. The claimed time entries as well as an itemized list of the various claimed costs are attached to Wagner's declaration. [Doc. 79 Ex. A].

The defendant BSE opposes the plaintiff's application on two grounds. First, BSE argues that pursuant to the District Court's Order, NEFT is entitled to reimbursement of only those reasonable attorneys' fees and costs which were incurred in enforcing the Note, and not the overall settlement agreement. BSE therefore contends that NEFT is not entitled to recover any fees and costs incurred from May 13, 2005 to May 24, 2006 on subjects other than entry of judgment on the Note against the maker BSE. Second, BSE challenges the reasonableness of the hourly rates claimed by the plaintiff's attorneys. [Doc. 80].

### A. "Enforcing the Settlement" v. "Enforcing the Note"

BSE's first objection to NEFT's application for an award of fees and costs concerns the scope of the fees and costs sought. Specifically, BSE argues that NEFT's recovery should be limited only to the time spent by counsel attempting to "enforce the Note." BSE argues that the majority of NEFT's attorneys' time was spent attempting to "enforce the settlement," *i.e.*, through securing collateral and contempt proceedings, and that only a relatively small portion of the time claimed (4.3 hours) was actually spent attempting to "enforce the Note."

As grounds for this argument, BSE contends that the sole basis for the award of fees and costs in this case is the language of the Note, which provides: "In the event this Note is placed in the hands of an attorney for a collection [BSE] agrees to pay a reasonable attorney's fee, litigation expenses, court costs, and all other collection costs." BSE argues that the District Court's Findings of Fact and Conclusions of Law [Doc. 77] are consistent with this language, in that the Court ordered BSE "to reimburse NEFT for its reasonable attorney fees and costs incurred in *enforcing the Note*" (emphasis added). The Judgment Order [Doc. 78] that was entered, however, directs BSE "to reimburse NEFT for its reasonable attorney fees and costs incurred in *enforcing the settlement*" (emphasis added). BSE argues that the Judgment Order is inconsistent with the District Court's Findings of Fact and Conclusions of Law, and that the latter order should prevail, as it is more consistent with the Note itself.[2]

The Court does not find the District Court's use of the phrases "enforcing the Note" and "enforcing the settlement" to be inconsistent. Rather, it appears from the Findings of Fact and Conclusions of Law that the terms are essentially interchangeable. The District Court states in its

---

[2]BSE has filed a motion [Doc. 84] seeking an amendment of the Judgment Order, which motion is currently pending before the District Court.

Findings of Fact and Conclusions of Law that NEFT's acceptance of the Note "constitutes a compromise and settlement of NEFT's claims against BSE. It was an agreement to accept, in settlement of NEFT's claims, an obligation, something different from or less than that to which NEFT claims it was entitled." [Doc. 77 at 12]. It is the opinion of this Court that the District Court viewed the "Note" and the "settlement" as essentially being one and the same: the "settlement" consisted of BSE giving the "Note," and therefore the "Note" is the "settlement." As such, the Court does not find the District Court's Findings of Fact and Conclusions of Law to be inconsistent or incongruous with the Judgment Order.

Upon review of the time claimed by the plaintiff's attorneys, the Court finds that NEFT is entitled to recover the attorneys' fees and costs claimed which were incurred from the defendants' failure to deliver adequate security on May 13, 2005, until the final reply brief regarding the proposed findings of fact and conclusions of law was filed on June 23, 2006. The Court finds that this time, which was spent obtaining adequate security and in pursuing contempt proceedings against the defendants for their failure to abide by the terms of the settlement agreement, was time spent spent "enforcing the Note" within the meaning of the District Court's order. Accordingly, NEFT is entitled to recover for its fees and costs incurred during this time.

### B. Calculation of Lodestar Fee

Having determined the scope of the fees and costs claimed, the Court turns to the issue of the reasonableness of the fees charged by NEFT's counsel.

"'The primary concern in an attorney fee case is that the fee awarded be reasonable,' that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." Adcock-Ladd v. Secretary of Treasury, 227 F.3d 343, 349 (6th Cir. 2000)

7

(quoting Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir. 1999)). In deciding what constitutes a reasonable fee, the Court begins with determining the "lodestar" amount, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

One of the most important factors for the Court to consider in calculating the lodestar amount is the result obtained.[3] Adcock-Ladd, 227 F.3d at 349. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley, 461 U.S. at 435. In the present case, while the plaintiff did not obtain all of the relief it requested, it did recover over 90% of the damages originally claimed. Accordingly, the Court finds that the plaintiff achieved excellent results in this case.

Even if an excellent result is achieved, however, a Court, within its discretion, may reduce the total number of hours claimed if they are unreasonable. Anglo-Danish Fibre Indus., Ltd. v. Columbian Rope Co., 2003 WL 223082, at *3 (W.D. Tenn. Jan. 28, 2003). "The question is not whether a party prevailed on a particular motion, nor whether, in hindsight, the time expended was strictly necessary to obtain relief achieved; instead, the question is whether a reasonable attorney

---

[3]The Court also may consider the following additional factors in calculating the basic lodestar fee and/or adjustments thereto:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Adcock-Ladd, 227 F.3d at 349 n.8 (quoting Reed, 179 F.3d at 471-72 n.3).

would believe the work to be reasonably expended in pursuit of success at the time when the work was performed." Id. The plaintiff has the burden of demonstrating that the amount of hours claimed is reasonable. See Blum v. Stenson, 465 U.S. 886, 897 (1984).

BSE does not challenge any specific time entries as being unreasonable or excessive. Nevertheless, the Court has carefully reviewed the plaintiff's submissions and concludes that the tasks performed and the number of hours claimed are reasonable.

Having determined that the amount of hours claimed were reasonably expended, the Court must now determine a reasonable hourly rate. In making this determination, the Court must initially examine the "prevailing market rates in the relevant community." Id. at 895. In cases where an attorney from another jurisdiction voluntarily represents a party in a lawsuit, the Sixth Circuit has held that the "relevant community" is the legal community in the jurisdiction where the suit is filed:

> [W]hen a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is pending, the court should deem the "relevant community" for fee purposes to constitute the legal community within that court's territorial jurisdiciton; thus the "prevailing market rate" is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area wherein he maintains his office and/or normally practicees, at least where the lawyer's reasonable "home" rate exceeds the reasonable "local" charge.

Adcock-Ladd, 227 F.3d at 350.

In Hudson v. Reno, 130 F.3d 1193 (6th Cir. 1997) abrogated on other grounds by Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843 (2001), the plaintiff's lawyer, an attorney from Washington, D.C., had requested a rate of $225 to $300 for his work in the case. The trial

court awarded the plaintiff's attorney fees at the rate of $150, the then-prevailing rate in Knoxville, Tennessee. The Sixth Circuit affirmed that decision, stating as follows:

> [T]his Court has made clear that it is not an abuse of discretion for a court to apply local market rates. Thus, a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate.

Id. at 1208 (citations and quotation marks omitted).

In the present case, the plaintiff seeks an award based upon a rate of $355 per hour for attorney Wagner; a rate of $195 per hour for attorney Reilly; and a rate of $125 per hour for a law clerk. BSE objects and, relying upon BSE's counsel's familiarity with the local prevailing rates, argues that the prevailing rate in Knoxville, Tennessee, for an experienced partner ranges between $200 to $250 per hour, and that for a new associate, the prevailing rate is $125 per hour. Based upon its own familiarity with the local market both as a litigator for 25 years and as a judge, the Court agrees with the assessment of BSE's counsel in this regard. Accordingly, the Court recommends that the plaintiff be awarded fees at a rate of $225 per hour for attorney Wagner; a rate of $150 per hour for attorney Reilly; and a rate of $50 per hour for the law clerk.

Finally, the Court notes that it has also reviewed the costs claimed by the plaintiff and finds all of these claimed costs to have been reasonably expended.

## III. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED**[4] that Plaintiff's Application for Attorneys Fees [Doc. 79] be **GRANTED** and that the Plaintiff NEFT, LLC be awarded fees and as follows:

| | |
|---|---|
| 50.85 hours x $225 hourly rate = | $11,441.25 |
| 72.2 hours x $125 hourly rate = | 9,025.00 |
| 8.42 hours x $50 hourly rate = | 421.00 |
| Costs | 3,172.25 |
| TOTAL | $24,059.50 |

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).